**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 11-23585-CIV-GRAHAM/GOODMAN**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

STEWART A. MERKIN,

      Defendant.

_____/

**POST-DISCOVERY HEARING ORDER**

**<u>REGARDING RULE 30(b)(6) DEPOSITION NOTICE</u>**

The issue before the Court appears straightforward on its face: whether Defendant can take a Rule 30(b)(6) deposition of the SEC in this case. Phrased differently, the issue is whether the SEC can foreclose a 30(b)(6) deposition in a case it initiated by arguing that the deposition would necessarily and always require the disclosure of privileged or otherwise protected information. And, to use a third variation on the phrasing of the issue, the question is whether a civil defendant may obtain factual information in a deposition taken of a government agency pursuant to Rule 30(b)(6) in a manner which does not cause the agency to disclose the work product of its counsel, and, if so, what safeguards can be implemented to prevent an abusive deposition?

For the reasons (and with the limitations and safeguards) discussed below, the Court concludes that the answer is *yes*, Defendant may take the 30(b)(6) deposition of the SEC in this case.

## I.    Background

The SEC filed this civil lawsuit against Defendant Merkin, an attorney, for allegedly making false public statements in connection with the purchase and sale of penny stock.  Specifically, the SEC accuses Merkin of stating falsely in four letters, which he knew would be posted on the internet, that his client was not being investigated about possible violations of the securities laws.  The SEC alleges that these statements were false because Merkin knew full well about an SEC investigation because Merkin was actually representing his client in the investigation.  The SEC seeks injunctive relief, an order requiring Merkin to disgorge all ill-gotten gains, civil money penalties and an order barring Merkin from participating in any penny stock offering.

Over the course of several months, Merkin's counsel attempted to convince the SEC to permit him to take a 30(b)(6) deposition.  He ultimately issued a 15-topic 30(b)(6) deposition Notice.  The SEC objected to the Notice and asked Merkin to withdraw it.  The SEC took the position that no 30(b)(6) deposition should go forward because such a deposition would lead to questions implicating work product protected information, the attorney-client privilege,

the deliberative process privilege and the investigative privilege.  The SEC argued that a 30(b)(6) deposition would require the SEC to produce its own enforcement division attorneys as deposition designees or would require those government lawyers to prepare a non-lawyer by divulging the attorney's opinions, strategies and thoughts.  It also contended that the noticed topics were irrelevant and/or overbroad and that, to the extent the topics were not, the SEC already produced documents that Merkin could use to determine the facts and information upon which the SEC based its claims.

## II.    **The Discovery Hearing**

Instead of filing discovery motions, the parties complied with Judge Graham's discovery procedures order by conferring over the dispute, calling Chambers to schedule a discovery hearing and then submitting relevant materials.  [*See* ECF No. 15, p. 2].  The submitted materials included letters discussing the discovery dispute that were created during the conferral process and effectively serve as mini-briefs.  The parties also submitted post-hearing Notices of Supplemental Authority.  [ECF Nos. 26; 30].

At the hearing, the SEC argued that it was *not* taking the broad position the SEC was exempt from Rule 30(b)(6) and need not ever produce a 30(b)(6) witness.  Instead, it contended that whether the SEC must produce a 30(b)(6) witness should be decided on a case-by-case, topic-by-topic basis and that,

applying this approach, the Court should conclude that none of the noticed topics warrant a 30(b)(6) deposition.

Notwithstanding this seemingly flexible and nuanced position, SEC counsel advised that he – the Assistant Chief Litigation Counsel of the Enforcement Division [*see* ECF No. 30] – had never personally produced a 30(b)(6) designee in his eight years with the agency, was unaware of any instance where another SEC attorney had done so and could not imagine even one issue in this case which could justify a 30(b)(6) deposition.  SEC counsel also cited cases, from this District and other districts, where courts have ruled that a 30(b)(6) deposition of the SEC was inappropriate and would not permit it.

Merkin's counsel argued that, despite its rhetoric, the SEC was actually seeking special treatment under a rule that by its own terms applies equally to all parties.   To that end, Merkin's counsel argued that he is entitled to obtain admissions from the SEC during a 30(b)(6) deposition and, for illustrative purposes, explained that he wants an SEC designee to agree or concede that the SEC instructs parties under investigation to keep the existence of the investigation confidential.  In response to a question from the Court, Merkin's counsel also opined that a 30(b)(6) deposition would be *less* expensive than, for example, propounding equivalent requests for admission.

Merkin's counsel, who has been in private practice since 1985 and who advised that he routinely litigates against the SEC in civil enforcement actions, also stated that he has previously issued 30(b)(6) notices in SEC cases.  While counsel could not recall a specific case in which he succeeded in taking such a deposition, he cited a number of cases from other districts where the SEC or another government agency provided a 30(b)(6) witness.

Based on these arguments, the parties sought opposing relief during the hearing: (1) The SEC requested an order quashing the Notice or, in the alternative, a protective order preventing Merkin from taking a 30(b)(6) deposition; and (2) Merkin asked for an order compelling the SEC to comply with his request for a 30(b)(6) deposition.

### III.    The Specific Topics Listed in the 30(b)(6) Notice

Merkin listed the 30(b)(6) topics in an exhibit attached to his Notice:[1]

## Exhibit "A"

1.    The specific facts, information, documents, investigative testimony, and/or other direct and/or circumstantial evidence, including but not limited to the factual portions of the Staff's "Action Memo" to the full Commission, and/or specifically relied upon by the Plaintiff, which support the specific allegations, singular cause of action, and various forms of requested relief asserted by, or requested by the Plaintiff from/against Mr. Merkin, in the Complaint of the Securities and Exchange Commission (D.E. 1), in the matter styled, "SEC v. Stewart A. Merkin," Case No. 11-cv-23585-DLG, filed in the U.S. District Court for the Southern District of Florida, which asserts that Mr. Merkin violated the anti-fraud provisions of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder, and seeks various forms of relief from/respecting Mr. Merkin.

---

[1]    Exhibit A to the Notice is reproduced verbatim in this order.

2. Any exculpatory facts, information, documents, investigative testimony, and/or other direct and/or circumstantial evidence, including but not limited to the factual portions of the Staff's "Action Memo" to the full

Commission, which support Mr. Merkin's innocence, defenses, and/or affirmative defenses, which Plaintiff uncovered during its investigation of StratoComm and/or Mr. Merkin, or at any other time, prior to filing, or after the filing of the Complaint of the Securities and Exchange Commission (D.E. 1), in the matter styled, "SEC v. Stewart A. Merkin," Case No. 11-cv-23585-DLG, filed in the U.S. District Court for the Southern District of Florida, which asserts that Mr. Merkin violated the anti-fraud provisions of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder.

3. The non-public, private, and confidential nature of SEC investigations.

4. The SEC's routine practice of directing and/or requesting individuals to refrain from disclosing non-public, private, and confidential SEC investigations.

5. The SEC's routine practice of directing and/or requesting that recipients of SEC Formal Orders of Investigation to refrain from publicly disclosing the contents or substance of SEC Formal Orders.

6. All SEC actions, and/or any current and/or former investigation(s) of the Pink Sheets (also known as Pink Sheets, OTC; Pink OTC Markets, Inc., the OTC, and/or OTC/Pink Sheets, including its various predecessors, successors, agents, representatives, owners, legal counsel, and/or employees).

7. Any and all SEC legal proceedings involving purported violations of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder, against attorneys who provided legal services to public companies and/or issuers listed on the Pink Sheets (also known as Pink Sheets, OTC; Pink OTC Markets, Inc., the OTC, and/or OTC/Pink Sheets, including its various predecessors, and successors).

8. Any and all SEC administrative proceedings involving purported violations of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder, against attorneys who provided legal services to public companies and/or issuers listed on the Pink Sheets (also known as Pink Sheets, OTC; Pink OTC Markets, Inc., the OTC, and/or OTC/Pink Sheets, including its various predecessors, and successors).

9.  Any and all SEC public statements or positions, including but not limited to pronouncements, guidance, Rules, Regulations, No-Action Letters, and related comments, concerning restrictions, comments, approvals, and/or criticisms by the SEC of the Pink Sheets (also known

    as Pink Sheets, OTC; Pink OTC Markets, Inc., the OTC, and/or OTC/Pink Sheets, including its various predecessors, and successors), itself, or its practices, procedures, rules, and/or use of Attorney Letters, during the time period from 2002 through 2012.

10. Any and all of the SEC's public statements or positions, including, but not limited to pronouncements, guidance, Rules, Regulations, No-Action Letters, and related comments, concerning the "Intent" and/or "scienter" element, necessary to prove a fraud claim in violation of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder.

11. Any and all of the SEC's public statements or positions, including, but not limited to pronouncements, guidance, Rules, Regulations, No-Action Letters, and related comments, concerning the "Materiality" element, necessary to prove a fraud claim in violation of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder.

12. Any and all of the SEC's public statements or positions, including, but not limited to pronouncements, guidance, Rules, Regulations, No-Action Letters, and related comments, concerning the "in connection with the purchase or sale" element, necessary to prove a fraud claim in violation of Section 10(b) of the Exchange Act, and SEC Rule 10b-5, promulgated thereunder.

13. The SEC's belief that, and evidence demonstrating that Stewart Merkin violated, and unless enjoined will again violate Section 10(b) of the Exchange Act, and Rule 10b-5, promulgated thereunder, necessary to obtain the injunctive relief requested by the SEC, other than the specific events giving rise to the instant, singular lawsuit.

14. The SEC's belief that, and evidence demonstrating that Stewart Merkin should be barred from participating in any offering of penny stock.

15. All available, applicable, information respecting (i) any legal requirement (or, the lack of any legal requirement); (ii) that mandates disclosure (iii) of SEC investigations publicly; (iv) the application of the Fifth Amendment to the Constitution of the United States, if any, to said topic; and (v) all SEC public statements on the duty (or lack of duty) to disclose the existence of current and/or ongoing SEC investigations, whether:

7

> (a)   Trading in the subject company's securities;
> (b)   Not trading in such securities; and/or
> (c)   Whether it matters.

## IV.   **Applicable Law**

By its very terms, Rule 30(b)(6) applies to the Government.  The Rule provides, in pertinent part, that "a party may name as the deponent a public or private corporation, a partnership, an association, **a governmental agency**, or other entity . . . ." (emphasis added).  Thus, there is no express or implied exception to Rule 30(b)(6) for government agencies (even though the Government enjoys privileges unavailable to private litigants, such as the deliberative process privilege, the law enforcement privilege and the informant privilege).  In fact, the Advisory Committee Notes to Rule 30(b)(6) indicate that in 1970 the Rule was revised specifically to allow for the deposition of a governmental agency.

Despite the SEC's insistence that it is not advancing a *per se* rule excluding it from complying with Rule 30(b)(6), its counsel's statements suggest otherwise. It is therefore appropriate, as a threshold matter, to reject the notion that the Government (in general) and the SEC (in particular) enjoy some type of automatic, special exemption from Rule 30(b)(6).

As succinctly noted by nationally recognized civil discovery expert United States District Judge Shira Scheindlin in *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009), "[l]ike any ordinary litigant, the Government must

abide by the Federal Rules of Civil Procedure.  It is not entitled to special consideration concerning the scope of discovery, **especially when it voluntarily initiates an action**." (emphasis added).[2]  Judge Scheindlin also noted in *Collins & Aikman* that "[w]hen a government agency initiates litigation, it must be prepared to follow the same discovery rules that govern private parties (albeit with the benefit of additional privileges such as deliberative process and state secrets)."  *Id.* at 418.[3]

Therefore, just like any party litigating in federal court, Merkin has the right to take a 30(b)(6) deposition from the SEC, subject to privilege and work product claims available to all litigants as well as special privileges enjoyed by the Government.  *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011) (noting that the Rule "provides [the SEC] neither an exemption from Rule 30(b)(6) nor 'special consideration concerning the scope of discovery'") (quoting *Collins & Aikman*, 256 F.R.D. at 414).[4]

---

[2]     *Contra* GEORGE ORWELL, ANIMAL FARM ch. X (1945) ("All animals are equal, but some animals are more equal than others").

[3]     Lead SEC counsel in this case should be familiar with *Collins & Aikman* because he also represented the SEC in that case.

[4]     Because the SEC is seeking sanctions that would, if granted, yield "a very severe penalty," this civil case "can be considered 'quasi-criminal' in nature." *United States v. Sanchez*, 520 F. Supp. 1038, 1040 (S.D. Fla. 1981).  *See also SEC v. Snyder*, No. H-03-04658, 2006 WL 6508273, at *1 (S.D. Tex. Aug. 22, 2006) (recognizing "the quasi-criminal nature of this proceeding [seeking injunctive

In *Kramer,* the SEC asserted the same arguments as in this case.  Namely, that: (1) the information sought from the SEC qualified as protected attorney work product; (2) the request was tantamount to an effort to take the deposition of SEC counsel; (3) the defendant could learn the facts underlying the SEC's allegations by other means; (4) the SEC already produced all the documents it has; (5) the SEC has no independent knowledge of the facts and documents; and (6) either SEC counsel or an investigator prepared by SEC counsel would need to appear as the 30(b)(6) witness for the Government.

Noting that it is highly unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, the *Kramer* court explained that the need for protection usually cannot be determined before the examination begins.  That court also underscored the practical point that a party could move for a protective order if the need *actually* arises during a deposition. The court determined that the magistrate judge's ruling – precluding a 30(b)(6) deposition of the SEC because he concluded the questions would necessarily intrude upon the work product and deliberative process privileges – was clearly

---

relief, disgorgement, and a monetary penalty for alleged securities fraud and insider trading] as well as the gravity of what is at stake for Defendant").  This practical reality is equally present in this case and necessitates careful consideration of the SEC's attempts to avoid a Rule 30(b)(6) deposition in a case that it, not the Defendant, chose to file.

erroneous and therefore overruled the order denying the defendant's motion to compel a 30(b)(6) deposition from the SEC.

The *Kramer* court considered the work product and deliberative process arguments advanced (preemptively) by the SEC, but it explained that the defendant "sought to discover only the **facts** underlying the claim against him and not the mental impressions of Commission counsel." 778 F. Supp. 2d at 1328 (emphasis added). The court accurately noted that "a blanket claim of privilege in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." In this regard, the *Kramer* court also rejected the argument that a defendant must first use other discovery tools (because the rule contains no such precondition). Finally, it noted that in addition to retaining the right to object to questions, the SEC was under no obligation to designate its counsel as its 30(b)(6) witness.

The SEC categorizes *Kramer* as an outlier case that is contrary to the weight of judicial authority. Nevertheless, one of the leading treatises on civil procedure cites *Kramer* with approval and cites other cases in which courts deemed the FBI and Navy Department government agencies within 30(b)(6) that could be compelled to provide designees for a 30(b)(6) deposition. 8A CHARLES

11

ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE &

PROCEDURE § 2103 n. 37.[5]

Moreover, several district courts have applied 30(b)(6) to government

agencies and have rejected sweeping arguments that a deposition could not go

forward because of the *possibility* that some questions might seek protected

information.  *United States v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167,

2009 WL 5227661 (S.D. Ohio Nov. 20, 2009) (granting defendant's motion to

compel and noting that the Government is not exempt from the 30(b)(6)

discovery tool which expressly applies to agencies);[6]  *EEOC v. Sterling Jewelers*,

No. 08-CV-00706(A)(M), 2010 WL 2803017 (W.D.N.Y. July 15, 2010) (denying

federal agency's motion for a protective order to prohibit the 30(b)(6) deposition

because the motion was premature and abstract to the extent that, with no

questions having actually been asked, the Court could not "at this stage . . .

conclude that there are no permissible areas of questioning"); *EEOC v. LifeCare*

---

[5]      In their April 2012 supplement, the authors also added the comment that "permitting a party to invoke work product as a blanket obstacle to a 30(b)(6) deposition seems to undermine the important utility of that device."

[6]      The *Health Alliance* court rejected the same arguments the SEC is making here, explaining that: (1) defendant is not necessarily seeking to take the deposition of government counsel; (2) the Government is able to prepare a non-attorney witness to testify on its behalf; (3) if only government lawyers have the information to testify, then they can use their knowledge to prepare another designee to answer the 30(b)(6) questions; and (4) the Government cannot insist that the defendant instead only issue interrogatories to obtain the information.

*Mgmt. Servs., LLC*, No. 02:08-cv-1358, 2009 WL 772834 (W.D. Pa. Mar. 17, 2009) (denying the EEOC's motion for protective order after rejecting the argument that the 30(b)(6) questions would invade the deliberative process privilege, deeming "without merit" the argument that the deposition is not necessary because the agency already provided its investigative file and branding as "premature" the agency's unilateral declaration that all information known to the EEOC is privileged);[7] *United States v. Magnesium Corp. of Am.*, No: 2:01-CV-40DB, 2006 U.S. Dist. LEXIS 87734 (D. Utah Nov. 27, 2006) (granting defendant's motion to compel the government to designate witnesses to provide testimony in response to three 30(b)(6) notices and rejecting the argument that the defendant could use the EPA's internet websites to obtain information).[8] *Cf. SEC v. Nacchio*, No. 05–cv–00480–MSK–CBS, 2009 WL 211511 (D. Col. Jan. 29, 2009) (demonstrating that the SEC does sometimes designate 30(b)(6) witnesses and ruling on SEC's instructions to its designees not to answer certain questions it deemed invasive of the deliberative process privilege).

---

[7]     That court also noted that the federal agency, "like all other litigants, should object to actual questions which it believes invade any applicable privilege during the deposition and cannot be granted unwarranted or overly broad protections prior to any questions being asked of the deponent." *Id.* at *2.

[8]     The SEC asserts a similar theory in response to Merkin's 30(b)(6) Notice, contending that a 30(b)(6) deposition is unnecessary because "much of the information" Merkin seeks is "accessible through the Commission's website or industry publications, or through discovery from Pink Sheets." [Letter from SEC trial counsel to Merkin's counsel (May 17, 2012) (on file in Chambers)].

The parties here have not submitted any binding Supreme Court or Eleventh Circuit opinions involving civil litigants' efforts to obtain 30(b)(6) depositions from the SEC or any other federal agencies. Indeed, virtually all of the case law authority appears to be from federal magistrate or district court judges. Although the SEC has submitted non-binding authorities to support its position, including cases from this District,[9] there are other federal cases in Florida that reach opposite results. *See*, *e.g.*, *Kramer*, 778 F. Supp. 2d 1320; *FTC v. Cyberspy Software, LLC*, 6:08-cv-1872 slip op. (M.D. Fla. May 26, 2009) (denying the FTC's motion for protective order concerning a 30(b)(6) notice, rejecting the argument that the FTC would either have to produce its trial counsel or have its trial counsel prepare the designee, noting that a party is required to disclose the facts underlying its claims and that facts "are always discoverable regardless if they have been conveyed to an attorney," observing that "[i]t is the FTC's prerogative to designate which person(s) will testify" and concluding that "defendants are entitled to discovery of the facts supporting the FTC's claims").

A government agency's concerns over privilege in a 30(b)(6) deposition would not be analytically different if the agency involved was connected to a *state* or *city* instead of the federal government. Thus, cases analyzing privilege arguments from different government agencies are persuasive and instructive.

---

[9]     *SEC v. Monterossa*, No. 07-61693, slip op. (S.D. Fla. June 2, 2009); *SEC v. Mutual Benefits Corp.*, No. 04-60573, slip op. (S.D. Fla. Nov. 22, 2005).

As a general proposition, government agencies embroiled in litigation are subject to the same discovery rules as private litigants, regardless of the level of government to which the agency belongs.  This fundamental rule was recognized in *Francis v. City of New York*, 262 F.R.D. 280 (S.D.N.Y. 2009) (Scheindlin, J.), which held that "the City does not have special procedural rights in federal court" and emphasized that government agencies are "like any ordinary litigant" and "must abide by the Federal Rules of Civil Procedure."  Despite her noted understanding of, and "sympathetic" attitude toward, New York City's tremendous litigation caseload, Judge Scheindlin nevertheless concluded that "the City does not have special procedural rights in federal court."  262 F.R.D. at 282.  Similarly, another district court granted a motion to compel the District of Columbia government to produce a 30(b)(6) witness for deposition and in doing so remarked that the District "cannot claim privilege pre-emptively, before any deposition question has been propounded."  *Elkins v. District of Columbia*, 250 F.R.D. 20, 27 (D.D.C. 2008).

The concern that a 30(b)(6) deposition would risk disclosure of privileged information is not unique to cases involving the Government.  To the contrary, private litigants routinely confront identical hazards and raise similar objections (in motions for protective orders, motions to quash or objections to motions to compel).  To be sure, under certain circumstances the Government may be able to

assert privileges unavailable to private litigants, but the fundamental concern that a 30(b)(6) witness might reveal privileged information is present in private litigation as well as cases involving a government agency.

Similar to the SEC's stated concerns in this case, private litigants often object to 30(b)(6) depositions because they say the depositions would require an attorney to testify or would necessarily cause an attorney to prepare the designee(s).  But courts routinely reject those very arguments from private litigants.  In addition, the argument that a lawyer would be involved in the preparation process is simply a truism which, if sufficient to preclude 30(b)(6) depositions, would eliminate that discovery tool.  This is because lawyers *usually* prepare their clients' 30(b)(6) designees.  *Radian Asset Assurance, Inc. v. College of the Christian Bros. of N.M.*, 273 F.R.D. 689, 692 (D.N.M. 2011) ("while counsel will have to carefully prepare the 30(b)(6) representative, counsel must **always** do so. Moreover, the 30(b)(6) representative will have counsel present to protect privileged matters") (emphasis added).

The mere fact that it might be an SEC attorney preparing a government investigator as the designee instead of a private attorney preparing the client's current or former employees is not a meaningful distinction.  The privilege argument is identical – and if the argument is rejected in cases where private litigants seek to avoid a 30(b)(6) deposition (and it is), then there seems to be no

16

reason to adopt a different result simply because the litigant happens to be a government agency.

For example, in *EEOC v. Caesars Entertainment, Inc.*, 237 F.R.D. 428 (D. Nev. 2006), the defendant corporation sought a protective order precluding the 30(b)(6) deposition of a corporate representative concerning the facts and information supporting the defendant's position statement in response to discrimination charges as well as defendant's affirmative defenses. The defendant corporation argued that the 30(b)(6) deposition would invade attorney work product, compel attorney opinions and conclusions and intrude upon the attorney-client privilege. Plaintiff, however, asserted that it merely wanted to know the *facts* that its opponent relied upon for its position statement and affirmative defenses.

The *Caesars Entertainment* court denied the corporation's motion for a protective order. That court based its conclusion on points equally applicable to the instant case, including that: (1) using 30(b)(6) depositions to obtain the factual grounds for an opponent's positions and defenses is "not novel;" (2) deposition questions may pose a slightly greater risk than contention interrogatories of inadvertent disclosure of privileged or protected information but the risk is "adequately addressed" by the presence of counsel who may give appropriate instructions not to answer improper questions or questions which would result

17

in answers revealing work product or privileged information; (3) the 30(b)(6) witness can be counseled before the deposition on the scope of privileges and protections; and (4) it would be inappropriate under the circumstances to deny plaintiff its choice of discovery methods by requiring it to use contention interrogatories in lieu of a 30(b)(6) deposition.

Other district courts have permitted 30(b)(6) depositions in the face of arguments that the information sought could and should be obtained by other, more-efficient means.  *See*, *e.g.*, *New Jersey v. Sprint Corp.*, No. 03–2071–JWL, 2010 WL 610671, at *2-3 (D. Kan. Feb. 19, 2010) (also rejecting the argument that the 30(b)(6) deposition would duplicate discovery already obtained and explaining that the rule is designed to **bind** the corporation or agency);[10]  *see also Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (a party should not be prevented from taking a 30(b)(6) deposition "just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered").

The same result obtains when the objection is more directly premised on the work product privilege.  As one court noted, if construed too broadly the

---

[10]     The Court also held that the party seeking 30(b)(6) testimony should "not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admission already served."  To hold otherwise "would essentially limit a [party] to the first form of discovery served, since topics are bound to overlap."  *Id.* at *2.

work product privilege "may interfere with the essential function of the discovery process of narrowing issues for trial." *United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990). In *Pepper's Steel*, counsel repeatedly asserted the work product privilege as justification for instructing a 30(b)(6) witness not to answer questions if the information was received during the process of working with counsel. The court classified this instruction as "completely erroneous" and held that the third party defendant "cannot shield itself from discovery by objecting to all questions which would require the deponent to testify regarding facts learned while reviewing documents selected by . . . counsel." *Id.* at 699. The *Pepper's Steel* court provided a compelling and logical reason for its holding:

> Otherwise, **every witness** that [] counsel prepares for deposition pursuant to Rule 30(b)(6) **could assert the work product doctrine on the basis that he learned the facts while reviewing documents selected by [counsel]**.

*Id.* at 699 (emphasis added).

Permitting a litigant to use a 30(b)(6) deposition to learn **facts** would not cause disclosure of work product information merely because a lawyer prepared the witness. As the *Pepper's Steel* court explained, "[t]he revelation of facts relevant to the litigation **does not necessarily reveal the origin of those facts** or how those facts were selected or ordered." 132 F.R.D. at 698 (emphasis added);

19

*see also Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518 (S.D. Fla. 2002) (rejecting work product argument made in opposition to a motion to compel a 30(b)(6) deposition that a party need not provide information supporting their claim of underreporting, and concluding that plaintiffs must provide defendants with the facts supporting plaintiffs' contention that defendants underreported their sales).

By way of summary:

a.      Litigants usually cannot prohibit a 30(b)(6) deposition by arguing in advance that each and every question would trigger the disclosure of attorney-client and work product information;

b.      Litigants (and their counsel) served with a 30(b)(6) notice decide which witnesses to designate and those witnesses need not be (and generally are not) attorneys;

c.      The mere fact that attorneys were involved in the preparation of the 30(b)(6) witness does not foreclose all questions of the 30(b)(6) witness;

d.      Litigants can ordinarily select which available discovery tools they want to use, along with the order in which they want to use them, and courts usually will not force litigants to select another form of discovery (e.g., interrogatories) before permitting a 30(b)(6) deposition;

e.     Litigants are permitted to learn the facts underlying their opponent's claims and defenses;

f.     Counsel may protect against the disclosure of work product or privileged information in 30(b)(6) depositions by interposing appropriate objections and giving instructions on a question-by-question basis;

g.     The Government and its agencies are subject to the same discovery rules as private litigants; and

h.     Although the Government sometimes enjoys privileges not available to private parties, these unique privileges do not usually generate an automatic, across-the-board immunity from 30(b)(6) depositions.

## V.     <u>Conclusions</u>

To the extent that the SEC is urging a *de facto* immunity from 30(b)(6) depositions in this case, the Court rejects the argument.

To the extent that the SEC objects that none of the 15 topics designated by Merkin are appropriate for a 30(b)(6) deposition, the Court finds that the position is unpersuasive and overrules the objection.

The SEC, of course, may interpose objections and give privilege-based and Court order-based instructions not to answer specific questions at 30(b)(6) depositions taken in this case.  The Court understands and appreciates the SEC's concern that some of the topics are irrelevant and that it would not be permitted

to instruct its 30(b)(6) witness not to answer irrelevant questions unless those questions also implicated a privilege or a restriction imposed by the Court. Therefore, in an effort to streamline the 30(b)(6) depositions and to prevent the SEC from becoming trapped in the awkward scenario of having its counsel silently sit by while irrelevant and/or overly broad questions are asked, the Court considers it appropriate to pinpoint which topics may not, at least for now, be covered in a 30(b)(6) deposition of the SEC:

Topics 6 through 12 and 15 are irrelevant and/or unduly broad and the SEC need not now produce 30(b)(6) witnesses to respond to these eight topics. This ruling is without prejudice to Merkin's ability later to urge a 30(b)(6) deposition on these topics, on modified topics, or on other entirely new topics.

Phrased from Merkin's perspective, he will be *permitted* to take Rule 30(b)(6) depositions on Topics 1 through 5 and 13 through 14,[11] and the SEC may instruct its witnesses not to answer questions which its counsel in good faith believes would require the disclosure of information covered by the attorney-client privilege, the work product doctrine, the deliberative process privilege, the law enforcement privilege, the confidential informant privilege or any other

---

[11]     To use the language of the *Magnesium Corp.* decision: The Court understands that preparing 30(b)(6) witnesses "can be burdensome" and that "selecting and preparing a witness or witnesses will entail significant effort on the part of the [SEC].  The court nevertheless concludes that" some of Merkin's requests are "reasonable, and the United States [and, in particular, the SEC] must comply."  *Magnesium Corp.*, 2006 U.S. Dist. LEXIS 87734 at *19-20.

recognized privilege.  Concerning topics 13 and 14, Merkin's phrasing is problematic because it uses the term "belief."  Therefore, in an effort to eliminate additional discovery disputes, the Court concludes that Merkin may take a 30(b)(6) deposition on the facts supporting the SEC's *claims* that an injunction (topic 13) and a bar order (topic 14) are necessary.

Merkin, of course, may choose to pursue any objections and do-not-answer instructions by scheduling the disagreement for a discovery hearing after complying with the mandatory pre-hearing conferral requirement.

**DONE AND ORDERED** in Chambers, at Miami, Florida, June 12th, 2012.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Donald L. Graham
United States District Judge
All counsel of record