# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 11-23585-CIV-GRAHAM/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

STEWART A. MERKIN,

      Defendant.

_____/

## <u>POST-HEARING ORDER ON SEC ACTION MEMORANDUM</u>

This cause is before the Court following a June 22, 2012 discovery hearing. [ECF No. 39]. The Court considered several discovery issues at the hearing. This Order concerns only one of the issues: Defendant Merkin's contention that the Securities and Exchange Commission ("SEC") should produce to him a redacted version of the SEC's action memorandum (the "Memorandum"). The Memorandum, which the SEC filed under seal pursuant to a Court order for *in camera* review, contains recommendations from SEC enforcement division attorneys to the Commission. [ECF No. 42-1]. In addition to reviewing the Memorandum *in camera,* the Court also reviewed a two-page cover letter from the SEC (which served as a mini-brief) and Merkin's supplemental memorandum. [ECF No. 46].

The Court has reviewed all of these submissions and read all seven of the cases Merkin cited in his list of authorities.  [ECF No. 46-1].  Merkin has not relied upon one case in which the SEC was required to produce an action memorandum in whole or in part.  For that reason, along with the others discussed below, the Court **REJECTS** Merkin's argument that the SEC should produce a redacted version of the Memorandum and **SUSTAINS** the SEC's objections to producing the Memorandum. The Court also **AWARDS** the SEC **$500.00** in fees, to be paid by Merkin and/or his counsel, as detailed below, **within seven days** of the entry of this Order.

I.      <u>**PRELIMINARY STATEMENT**</u>

The Court concludes that the  Memorandum is protected by, at a minimum, the attorney-client privilege, the work product doctrine, and the deliberative process privilege.  As a letter/memorandum from SEC attorneys to their client about litigation (and the attorneys' communications of their opinions), it is classic attorney-client privilege material.  As a document from counsel to the client with opinions about the viability and wisdom of bringing a civil lawsuit against Merkin, it is also *attorney* work product material – the most-protected type of work product, rarely subject to a disclosure order.   And as a document where SEC attorneys provide their recommendations about a possible enforcement action to the decision-maker – the Commission itself – the Memorandum is also protected by the deliberative process privilege.

## II.   FACTUAL BACKGROUND

As explained by the SEC in its cover letter accompanying the Memorandum[1] [ECF No. 42-1], SEC attorneys prepared the Memorandum.   Not only does the Memorandum discuss a recommendation of an enforcement action against Merkin, but it also provides recommendations concerning a proposed action against Merkin's client and others.   The Memorandum analyzes the facts and provides the SEC's attorneys' mental impressions about the facts and the legal theories, as well as their strategic assessment of the proposed enforcement actions.

Merkin, for his part, argues that the SEC should be required to produce the Memorandum in a redacted form containing only the "factual" portions of the Memorandum.   To support this theory, Merkin argues that a party to litigation cannot keep secret the facts upon which it bases its claims or defenses.

## III.   ANALYSIS

### A.  The Attorney Work Product Doctrine

While Merkin's argument in favor of disclosure of the Memorandum - a party to litigation cannot keep secret the facts upon which it bases its claims or defenses – is *generally* correct, this argument does not support the notion that an otherwise privileged document is subject to automatic disclosure, or partial disclosure, merely because the

---

[1]     To be clear, any discussion, general as it may be, about the Memorandum's contents that the Court includes in this Order comes from the SEC's cover letter accompanying the filing, under seal, of the Memorandum. [ECF No. 42-1, pp. 1-2].  The SEC provided Merkin with a copy of the cover letter.

document analyzes *facts*.  Instead, the theory Merkin advances simply means that: (1) a party cannot, in the overall context of  litigation, keep secret the facts underlying that party's claim or defense; and (2) in rare cases, a document covered by the attorney work product doctrine or deliberative process privilege *might* be ordered produced in redacted form **if** the factual information was not otherwise available and the moving party showed substantial need and undue hardship.

Moreover, as discussed below, even if Merkin could overcome the work product doctrine and deliberative process privilege by demonstrating substantial need and undue hardship (a goal he has not come close to achieving), he would *still* not be able to compel production of the Memorandum because it is also protected by the attorney-client privilege, which does not have a "need/hardship" exception.

1. Protection From Producing The Entire Memorandum Under The Work Product Doctrine

Merkin's argument – that the SEC must produce the factual portion of the Memorandum – is overly broad yet detail-free.  For example, assume that ABC Inc.'s attorney prepares a 10-page opinion letter, containing counsel's opinion on the viability and wisdom of bringing a lawsuit against XYZ Corp.  As one would expect, assume further that the attorney's opinion letter contains a fact-based analysis on a witness-by-witness basis of the potential claims that could be raised in the proposed lawsuit and also evaluates the facts that counsel considers to be problematic or grounds for a possible defense.

If ABC, based on counsel's 10-page opinion letter, files a lawsuit against XYZ, asserting claims for fraud, conspiracy to commit fraud, and common law unfair competition, then ABC would not ordinarily be required to produce counsel's opinion letter in the normal course of discovery. However, ABC would need, upon receipt of a proper discovery request from XYZ, to produce designees to appear at a Rule 30(b)(6) deposition and, if the issue was listed on the 30(b)(6) notice, arrange for the designee (or designees) to testify about the *facts* which support the claims asserted in the lawsuit. Thus, ABC could not immunize from discovery the facts upon which it bases its lawsuit – but the obligation to provide facts in discovery does not mean that documents protected under the attorney-client privilege and attorney work product doctrine (discussing and analyzing the facts) must necessarily also be produced merely because the protected documents happen to discuss facts.

Evaluated from the other side of the litigation coin, the mere fact that ABC properly held back an attorney-prepared privileged document, which assesses the facts as they relate to potential litigation on a witness-oriented perspective, does not mean that ABC is justified in keeping secret those *facts* if it receives otherwise proper discovery requests. Consequently, XYZ could propound the following interrogatories to ABC, and ABC would be required to provide answers: (1) what facts demonstrate that XYZ's representations to ABC were false, (2) what facts establish that XYZ knew the factual representations were false when made, (3) what facts show that XYZ agreed

with others to make materially false representations to ABC, and (4) who else agreed with XYZ to participate in the alleged conspiracy and what facts establish the knowing involvement of the other co-conspirators?

ABC could not properly refuse to provide answers to these interrogatories, targeting the factual core of the lawsuit, by asserting that the facts are somehow privileged because its lawyer happened to evaluate those same facts (and perhaps others) in an opinion letter protected by both the attorney-client privilege and work product doctrine.   But XYZ's ability to obtain interrogatory answers or 30(b)(6) deposition testimony about these fundamental facts would not provide ammunition for an argument that the very attorney opinion letter which prompted the lawsuit must be produced because ABC cannot protect "the facts."   *Bush Dev. Corp. v. Harbour Place Assocs.*, 632 F. Supp. 1359, 1363 (E.D. Va. 1986) ("Counsel's statements concerning the claim's likely success, even when transcribed by the client, are prime examples of the types of materials entitled to near absolute protection under Rule 26(b)(3)."); *see also generally* EDNA S. EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 570 (4th ed. 2001) ("documents that detail an attorney's impressions of the strengths and weaknesses of a case are nearly, without exception, protected under the [work] product doctrine.").

2. <u>Merkin Has Not Yet Demonstrated That He Is Entitled To Receive a Redacted Version Of The Memorandum</u>

To be sure, courts sometimes excise, delete, or redact an attorney's mental impressions from an attorney work product document if necessary to provide the opposing party with discovery that is otherwise unavailable. One of the most-often cited cases concerning this sub-branch of the attorney work product doctrine is *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 381-382 (S.D.N.Y. 1974).

In *Xerox*, an in-house attorney for IBM interviewed 37 IBM employees and made notes of the interviews. Xerox requested and received from IBM a list of the 37 interviewees. Xerox then took depositions of 23 of the 37 employees, as well as the deposition of the in-house IBM attorney. At these depositions, Xerox was unable to elicit the factual information it desired because the witnesses said they could not recall the facts or the documents relating to the facts. Because Xerox could not obtain the factual information, it demanded production of IBM's in-house attorney's notes of the interviews. IBM objected, asserting the attorney work product doctrine. IBM contended that the notes contained the mental impressions, conclusions, opinions and legal theories of its attorney and were therefore subject to absolute protection from discovery. IBM also argued that Xerox had not made a sufficient showing of substantial need or undue hardship.

In response, Xerox conceded that the attorney's notes were attorney work product but argued that its "total inability" to "obtain the information from other

sources" demonstrated substantial need and undue hardship.[2]  Moreover, and more importantly for the issue presently pending before the Court concerning the Memorandum, Xerox stated that it wanted only the factual information contained in the notes and asked that the notes be provided in redacted form.

The *Xerox* Court ordered IBM to produce the notes, in redacted form after an *in camera* review by the Court, relating to the 23 employees whose depositions Xerox took but did not order production of the notes concerning the other 14 employees whose depositions had not yet been taken.  The Court held that these other notes would be subject to production under the same procedure if Xerox deposed the remaining 14 individuals and their memories were no better than that of the first 23 deponents.  In other words, Xerox would need to demonstrate the requisite need for privileged notes concerning the additional witness interviews.

In reaching this holding, the *Xerox* Court provided a succinct, helpful analysis of the guiding principles:

---

[2]     Federal Rule of Civil Procedure 26(b)(3)(A)(ii) provides that work product information may be discovered if the material is otherwise discoverable and "the party [seeking the work product] shows that it has substantial need for the materials to prepare the case and cannot, without undue hardship, obtain their substantial equivalent by other means."  But subsection (b)(3)(B) further provides that, "[i]f the court orders discovery of those [work product] materials," then it must also "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

1. Attorney work product should be protected when feasible, but "not at the expense of hiding the non-privileged facts from adversaries or the court."

2. "[T]he right or privacy in an attorney's *notes* must be balanced against the critical need for the facts."[3]

3. When the non-privileged facts "are intertwined with information which conceivably is privileged, the critical factor becomes the availability of the non-privileged facts from other sources."

4. Where no other sources exist, "then a balance must be struck in favor of distilling, if possible, the non-privileged facts from the attorney's documents."

5. If the distillation "becomes impossible, however, then the entire contents of the documents must be produced."

*Id.* at 381-382 (emphasis added).

Other courts have followed the approach articulated in the *Xerox* case. *United States v. Deloitte* LLP, 610 F.3d 129, 139 (D.C. Cir. 2010) (remanding case and instructing district court to assess whether a memorandum was entirely work product or whether a redacted version could be disclosed); *SEC v. Berry*, No. C07–04431 RMW (HRL), 2011

---

[3]     The Memorandum  is not comprised merely of an attorney's notes.  Instead, it is a formal memorandum from counsel to its client, which means it is *also* subject to the attorney-client privilege -- to which there is **no** "substantial need/undue hardship" exception.  Moreover, because it is a memorandum from government attorneys to their agency's decision-maker, the Commission itself, it is also protected by the deliberative process privilege.

WL 825742 (N.D. Cal. Mar. 7, 2011); *In re Healthsouth Corp. Sec. Litig.*, 250 F.R.D. 8 (D.D.C. 2008); *Astra Aktiebolag v. Andrx Pharm. Inc.*, 208 F.R.D. 92 (S.D.N.Y. 2002).

In order to demonstrate that production of a redacted version of the Memorandum is appropriate under the exception to the attorney work product doctrine, Merkin must first establish that he cannot obtain the facts from other sources. Merkin has not done that. In fact, he has not yet taken the 30(b)(6) deposition of the SEC, and he has not proffered what other discovery steps he has unsuccessfully pursued. To the contrary, it appears as though Merkin has taken <u>no</u> depositions, propounded <u>no</u> interrogatories and <u>no</u> requests for admission seeking this information. In short, he has not, at this point, come anywhere close to meeting the narrow exception to the attorney work product doctrine.

In the memorandum of law he submitted in support of his position, Merkin relies on cases which hold that a party may overcome a work product claim by demonstrating substantial need and undue hardship if the materials were not disclosed. This is an unremarkable position, as it comes directly from Federal Rule of Civil Procedure 26(b)(3)(A)(ii). But, notwithstanding his reliance on cases discussing the substantial need/undue hardship strand of the Rule, Merkin does not argue that he has, in fact, demonstrated the requisite substantial need. In fact, his memorandum is silent on the point. Instead, he merely says that he is entitled to know the "facts," as if that mantra were sufficient to overcome the work product protection of the Memorandum. <u>Not one</u>

of the cases Merkin cites stands for that extreme position.  If the simple discussion of facts in a work product document were sufficient to overcome the privilege, then it would eviscerate the protection afforded by the doctrine because the parties would be forced to prepare work product documents without discussing the facts for fear of routinely receiving orders to produce those documents.

Merkin's memorandum does not provide any support for his argument.  None of the cases hold that an SEC action memorandum prepared by SEC attorneys must be produced in redacted form merely because the person sued by the SEC wants to learn the facts.  Instead, the cases either discuss general legal principles (which are not in dispute here and are, in any event, fact-specific), concern procedurally different scenarios involving parties who, unlike Merkin, have, in fact, established substantial need for a work product document,[4] or involve scenarios where a party fails to establish that a document is privileged – which is a far-different analysis than evaluating whether a document which is most assuredly privileged should be produced in redacted form.[5]

---

[4]      In *Cardenas v. Jerath*, 180 P.3d 415 (Colo. 2008), the Court determined that the plaintiff in a medical malpractice case demonstrated substantial need for notes deemed work product because they were the only investigative report of what happened before, during and after a child's birth.  But this case lends no support here, as it is based on those specific, different facts – *and* because Merkin has not even attempted to show how or why he meets the substantial need/undue hardship exception.

[5]      In *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 686-87 (S.D. Fla. 2010), a case on Merkin's list of supporting authorities, the Court denied without prejudice a party's work product claim because it had not met its burden to establish the protection.  The Court observed that it had "grave doubts" about whether the party even "conducted an

Merkin's complete failure even to mention, in any way, in his memorandum how he meets his obligation to establish substantial need is puzzling, given that the Court, in the Order granting his motion to submit a post-hearing memorandum [ECF No. 45], noted that he "has not even proffered a reason to support his burden to demonstrate a particularized need to obtain a privileged document."  In addition, this omission in the memorandum is odd for another reason: several of the cases he lists specifically analyze whether a party has shown the necessary need.

Moreover, neither Merkin's memorandum nor the cases he cites discuss the attorney-client privilege – a privilege which the Court noted was applicable when it issued its Order granting Merkin's motion to submit a memorandum.  [ECF No. 45].

### B.  The Deliberative Process Privilege

Merkin asked for permission to file a memorandum of law because he wanted the opportunity to respond to a cover letter the SEC submitted along with the Memorandum.  In the cover letter, the SEC expressly noted that it was asserting the deliberative process privilege.   But Merkin's memorandum does not discuss that privilege at all.

---

independent, good faith review of the documents it claims are subject to protection." Moreover, the Court emphasized that the party "failed to adequately explain" (and the Court was "unable to imagine") how the asserted privileges "could possibly apply" to the documents.  The issue there, of course, was *if* the documents were covered by the work product doctrine, not whether documents which *are* privileged should be produced in redacted form.  The case is inapposite.

Moreover, Merkin's failure to demonstrate the requisite need for obtaining work product material means he has also failed to meet the burden for overcoming the deliberative process privilege.  *See Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* 376 F.3d 1270, 1277-78 (11th Cir. 2004) (holding that an agency's audit reports, internal memoranda, notes and work papers were protected by the deliberative process privilege and noting that the purposes of the deliberative process privilege are "to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny" and "to ensure that agencies are not forced to operate in a fish bowl."); *United States v. Farley,* 11 F.3d 1385 (7th Cir. 1993) (explaining that relevance alone is insufficient to demonstrate the particularized need necessary to overcome the deliberative process privilege and outweigh the reasons for confidentiality, and holding that a memorandum from the FTC to the DOJ referring a matter for a lawsuit was protected by the deliberative process privilege); *Utah Med. Prods. v. McClellan,* No. 2:03-CV-00525 PGC, 2004 WL 988877, at *2 (D. Utah Mar. 31, 2004) (documents used to assist the FDA in determining whether to seek an enforcement action and what type of action, if any, to take are protected by the deliberative process privilege).[6]

---

[6]      In *Utah Medical,* the party seeking production of the privileged document argued that the balance of interests nonetheless favored disclosure.  The Court noted that many factors influence the balancing test: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the government's role; and (5) the extent to which disclosure would hinder frank and independent discussion

C.  **The Attorney-Client Privilege**

Even if Merkin had demonstrated a need for obtaining the  Memorandum under the work product doctrine exception or deliberative process privilege balancing test (which he certainly did not), he would **still be confronted with the fundamental fact that the Memorandum is *also* covered by the attorney-client privilege**.  The cases cited above, even those which permit discovery of redacted work product documents, concern attorney notes or memoranda – not opinion letters to clients, which are entitled to protection as attorney-client privileged communications.  Unlike the work product exception to discovery, the attorney-client privilege does not have a "substantial need/undue hardship" exception to protected documents.

At the discovery hearing, Merkin's counsel referred vaguely to only one supposed authority -- an out-of-district, 1981 case -- to support his argument that he is entitled to a redacted version of the Memorandum.  In his post-hearing memorandum of law, Merkin did not in any way discuss the attorney-client privilege and the cases he cited did not address the privilege either.  [*See* ECF No. 46].

---

regarding contemplated policies and decisions.  2004 WL 988877, at *5.  The Court held that the document, which states the author's opinions about inspections, need not be disclosed under the balancing test.  The Court determined that the document "reflects the very type of forthright discussion that needs to occur within an agency to help . . . determine **whether or not enforcement action is appropriate**."  *Id.* (emphasis supplied). Because the Memorandum contains precisely that type of frank analysis and recommendation, releasing the Memorandum "could significantly chill" the SEC's deliberative process and this Court concludes that, as in *Utah Medical*, the "balance of interests tips decidedly in favor of non-disclosure" of the Memorandum.

If the Memorandum were subject to production, then Merkin surely would have been able to rely on more than a 30-year-old, out-of-district case that apparently arose when his counsel worked as an attorney for the SEC's Atlanta regional office. Merkin's post-hearing memorandum of law did not cite or mention in any way this 1981 case and his list of supporting authorities did not contain such a reference either.[7]

Merkin cites no identifiable, on-point applicable law to support his argument that he is entitled to a redacted version of the attorney-drafted Memorandum. Instead, he actually cites in his post-hearing memorandum to an entirely different case also involving his counsel where a district court *rejected* a party's attempts to obtain a similar action memorandum. *SEC v. World-Wide Coin Invs., Ltd.*, 92 F.R.D. 65 (N.D. Ga. 1981) (holding, in a case where Merkin's current trial counsel coincidentally was the SEC trial counsel, that a staff memorandum prepared by SEC counsel that recommended an enforcement action was protected from discovery by both the attorney-client privilege and the attorney work product doctrine); *SEC v. Nacchio*, No. 05–cv–00480–MSK–CBS, 2007 WL 219966 (D. Colo. Jan. 25, 2007) (holding that an SEC action memorandum

---

[7]      Although Merkin's post-hearing memorandum discusses another SEC case from the early 1980s in which his counsel served as SEC trial counsel, it appears to be a **different** case from the one his counsel mentioned during the discovery hearing because Merkin acknowledges in his memorandum that the defendant's attempts to compel production of an SEC action memorandum were unsuccessful. [*See* ECF No. 46, p. 2].  Apparently, Merkin discussed *SEC v. World-Wide Coin Invs., Ltd.*, 92 F.R.D. 65 (N.D. Ga. 1981), which undermines his argument, because the SEC mentioned it in its 2-page cover letter.  The other unpublished case from the 1980s which Merkin's counsel mentioned during the hearing is not discussed or cited in his post-hearing memorandum.

prepared by attorneys and accountants in the enforcement division -- which was reviewed by the magistrate judge *in camera* -- constituted "classic 'opinion' work product").[8]  The Court finds counsel's attempts to distinguish the *World-Wide Coin* case in Merkin's favor unpersuasive.

### D. The SEC's Voluntary Disclosure In Another Case

Merkin attached to his memorandum of law a redacted document that he contends the SEC voluntarily produced in another case.  But this document is <u>not</u> an action memorandum – it is a "Report of Investigation" prepared by the SEC's Office of Inspector General concerning allegations of retaliatory action by SEC Division of Enforcement Staff.  Merkin claims it "generally follows the format" of an SEC action memorandum.  Even if this description is correct, it does not generate support for Merkin's position, and he has not cited any authority to advance the argument that a voluntary disclosure in an unrelated matter somehow means that the SEC can be compelled to disclose a document protected by myriad privileges when it wishes to maintain the confidential nature of the document.

---

[8]     *See also Feshbach v. SEC*, 5 F. Supp. 2d 774, 783-784 (N.D. Cal. 1997) (holding, in a federal Freedom of Information Act case, that memoranda addressed to the Commission were protected by the attorney-client privilege and the attorney work product doctrine and did not require redaction for production of fact-only information); *Cf. SEC v. Strauss*, No. 09 Civ. 4150(RMB)(HBP), 2009 WL 3459204, *5 (S.D.N.Y. Oct. 28, 2009) (holding that notes taken by SEC staff are "classic work-product," even though they were taken by SEC attorneys during the interviews preceding the formal initiation of the litigation, because they were generated "in order to provide the Commission with information so that it could make the determination whether to proceed with litigation in this matter.") (internal quotation marks omitted).

IV.    <u>CONCLUSION</u>

Having reviewed the Memorandum *in camera* and recognizing that it is protected by the attorney-client privilege, the deliberative process privilege, and the attorney work product doctrine, the Court **REJECTS** Merkin's argument that the SEC should produce a redacted version of the Memorandum and **SUSTAINS** the SEC's objection.

Federal Rule of Civil Procedure 37 requires the Court to award attorney's fees as a cost-shifting mechanism to the prevailing party, in the absence of limited exceptions. The only conceivable exceptions potentially applicable here are that Merkin's position was "substantially justified" or that circumstances make the fees award "unjust."

Because the law is so overwhelmingly in favor of the SEC's position and because Merkin cited <u>no</u> applicable law to support his demand for production of a redacted version of a document protected by two privileges and the work product doctrine, the Court concludes that a cost-shifting fees award is appropriate. The Court is itself an expert on fees.  With these factors in mind, the Court **AWARDS** the SEC **$500.00** in fees, to be paid **within seven days** of the entry of this Order.

Rule 37 provides that the cost-shifting award shall be paid by the party, by the party's attorney, or both.  Because Merkin is himself an attorney, the Court does not want to automatically presume that the unsuccessful discovery argument flowed solely from his counsel.  Given Merkin's professional status, it is possible that he was aware of, encouraged or acquiesced in his counsel's futile efforts to compel the SEC to produce

a redacted version of a document protected by myriad privileges. If Merkin was knowingly involved in the unsuccessful discovery argument, then he shall share half of the financial burden with his counsel.  The payment shall be in the form of either one check (for the full amount, from Merkin's counsel) or two checks (one from Merkin and one from his counsel, at $250 per check).  Merkin's counsel shall submit a written notice to the Court's non-public efile inbox within 3 days of the payment, advising how the payment was made.  If counsel tenders the entire payment himself, then he and his firm may not directly or indirectly pass on the $500 cost for attorney's fees to Merkin.

If Merkin believes that a fees award is legally unavailable under the specific circumstances or that the amount is excessive, then he may file a motion within **5 days** of entry of this Order and the Court will schedule an evidentiary hearing.[9]

**DONE AND ORDERED** in Chambers, at Miami, Florida, June 29, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Donald L. Graham
United States District Judge
All counsel of record

---

[9]     This $500 award is not a disciplinary "sanction." Instead, it is simply an order implementing the presumptively mandatory cost-shifting mechanism of Federal Rule of Civil Procedure 37.  Therefore, this Order would not require counsel to answer "yes" if asked (by an insurance carrier, a judicial selection panel, a prospective employer or others) if a court has ever disciplined or sanctioned him.