**CLOSED
CIVIL
CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-23585-CIV-GRAHAM/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

STEWART A. MERKIN,

    Defendant.
_____/

<u>ORDER</u>

**THIS CAUSE** came before the Court upon Defendant Stewart A. Merkin's Dispositive Motion for Summary Judgment [D.E. 59] and the Securities and Exchange Commission's Motion for Summary Judgment [D.E. 61].

**THE COURT** having considered the motion, pertinent portions of the record, and being otherwise fully advised in the premises, finds that Defendant's motion is **DENIED** and Plaintiff's motion is **GRANTED**.

I. <u>BACKGROUND</u>

In this action the Securities and Exchange Commission ("SEC") alleges in a one count Complaint that Defendant Steward Merkin ("Merkin") violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 by making false public

1

statements in connection with the purchase or sale of the stock of StratoComm Corporation ("StratoComm"). The SEC alleges that in 2008 and 2010 Merkin falsely stated in four Attorney Letters posted on the internet that to his knowledge StratoComm was not under investigation regarding possible violations of securities laws, when in fact he knew that the SEC was conducting such an investigation. The SEC seeks an injunction prohibiting future violations and an order (i) barring Merkin from participating in any offering of penny stock, (ii) requiring disgorgement of his illgotten gains, and (iii) imposing civil penalties.

## II. <u>UNDISPUTED FACTS</u>[1]

Stewart Merkin is a practicing attorney who has advised clients in connection with the issuance of securities and has represented clients before securities regulators such as the SEC, state securities regulators, and self-regulatory organizations. StratoComm is a Delaware corporation with its principal place of business in Albany, New York. StratoComm's stock is traded in the over-the-counter securities market. From 2007 until at least January 2011, prices for StratoComm's common stock were quoted on

---

[1] Merkin does not dispute any of the facts listed in the SEC's statement of material facts pursuant to Local Rule 56.1(a). Thus, pursuant to Local Rule 56.1(b), these facts are deemed "admitted." Moreover, Merkin has not set out any "additional facts" he claims to be material, as permitted by Local Rule 56.1(a). Merkin "agrees that there are no 'material facts in genuine dispute'..." See D.E. 65.

the electronic interdealer quotation system operated by Pink Sheets LLC and its successor Pink OTC Markets, Inc., which is currently known as OTC Markets Group, Inc. (collectively referred to herein as "OTC Markets").

The OTC Markets electronic quotation system is used by broker-dealers to quote and trade over-the-counter securities. OTC Markets lists securities in tiers based in part on the quality of disclosure provided by the company.  StratoComm was listed in the OTC "Pink" tier.  Securities in the "Pink" tier are "shell or development stage companies with little or no operations as well as companies without audited financials and as such should be considered extremely speculative by investors." The OTC Pink tier is divided into three categories: "Current Information," "Limited Information," and "No Information."  OTC Markets may also designate a security as "Caveat Emptor" to indicate a concern such as an investigation of fraudulent activity.  If a security is not in the Current Information category and has been designated Caveat Emptor, the OTC Markets website does not display the price of that security to the public.

To qualify for the "Current Information" category, an issuer must provide sufficient public disclosure to satisfy the OTC Markets' guidelines and must submit an Attorney Letter that addresses certain topics related to the issuer. Such Attorney

Letters are available to the public on the OTC Markets website. Prior to submitting an Attorney Letter, an attorney must sign an Attorney Letter Agreement with OTC Markets. Exhibit A to that agreement describes the role and responsibilities of attorneys submitting Attorney Letters as follows:

> Pink Sheets recognizes the crucial role of attorneys in the disclosure process. Attorneys prepare, or assist in the preparation of, disclosure materials that are posted in the Pink Sheet News Service by, or on behalf of, issuers. These materials are relied upon by public investors in making their investment decisions. Thus, Pink Sheets, and the investing public, must be able to rely upon the integrity of in-house and retained lawyers who represent issuers.

> The *Standards of Professional Conduct for Attorneys Preparing and Practicing before the Commission in the Representation of an Issuer* promulgated by the Securities and Exchange Commission prohibits attorneys from assisting clients in the commission of frauds. Similarly, the Ethical Standards adopted in every State, while recognizing the duty of attorneys to represent their clients zealously within the bounds of the law, states that a lawyer may not "counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent." Pink Sheets urges counsel in preparing a letter with respect to adequate current information to consider carefully his or her ethical obligations to assist an issuer to prepare materials that provide investors with all material information necessary to make an informed investment decision.

The Attorney Letter Agreement also states at Exhibit A that an Attorney Letter "must state to the best knowledge of counsel, after inquiry of management and the directors of the Issuer"

4

whether or not the issuer of the Securities, any 5% holder, or counsel is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws, and if so, the details of such investigation must be provided in such letter.

Merkin served as outside securities counsel for StratoComm from at least May 2006 until early 2011. In November 2007, Merkin signed an Attorney Letter Agreement with OTC Markets permitting him to submit Attorney Letters on behalf of StratoComm. Between late 2007 and the end of 2010, Merkin prepared and signed at least thirteen Attorney Letters for submission to OTC Markets on behalf of StratoComm. During this period, Merkin also submitted Attorney Letters to OTC Markets on behalf of several other companies.

On January 24, 2008, the SEC initiated a formal investigation of StratoComm with respect to potential violations of the federal securities laws, including fraud. In connection with that investigation, the SEC issued a formal order of investigation ("Formal Order") stating that the SEC would be investigating whether the company or its agents may have been "employing devices, schemes or artifices to defraud," "obtaining money or property by means of untrue statements of material fact," or "engaging in transactions, acts, practices or courses of business which operated . . . as a fraud" with respect to the nature of StratoComm's business and its use of proceeds from securities offerings. By at least March 2008, Merkin was serving as StratoComm's attorney in

connection with the SEC's investigation. As counsel for StratoComm, Merkin communicated with SEC staff, requested and received a copy of the Formal Order, accepted service of subpoenas, forwarded documents to the SEC, and represented StratoComm during six days of investigative testimony. Merkin also represented StratoComm's CEO, Roger Shearer ("Shearer"), in connection with the investigation. Merkin accompanied Shearer during three days of testimony in May 2008 and October 2010. Similarly, Merkin represented three StratoComm employees in connection with the SEC's investigation. In that capacity, Merkin attended testimony at the SEC's offices in September 2010.

### 1.   April 8, 2008 Letter

On April 8, 2008, Merkin prepared and signed an Attorney Letter regarding StratoComm. That letter was posted on the OTC Markets website the same day. Among other things, Merkin's letter stated that neither StratoComm nor anyone owning 5% of the company was under investigation for securities violations:

> To the best knowledge of the undersigned counsel, after inquiry of management and members of the Board of Directors of the Issuer, neither the Issuer nor any holder of more than 5% of the outstanding shares of the Issuer is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws.

SMF ¶ 32.

Shortly before signing the April 8, 2008, letter, Merkin

received a copy of the SEC's January 2008 Formal Order.  Also shortly before signing that letter, Merkin accepted service of a subpoena to StratoComm in connection with the SEC's investigation. Thus, at the time that Merkin signed the letter of April 8, 2008, he had actual knowledge that his statement that StratoComm was not under any securities law investigation was false.

The April 8, 2008, letter gave OTC Markets "full and complete permission and right to publish this letter . . . for viewing by the public and regulators."  Merkin knew that this letter would be posted on the OTC Markets website for review by the investing public.

2.      **June 17, 2010 Letter**

On June 17, 2010, Merkin prepared and signed another Attorney Letter regarding StratoComm.  That letter was posted to the OTC Markets website the same day. Merkin again stated that neither StratoComm nor anyone owning 5% of the company was under investigation for securities violations:

> To the best knowledge of the undersigned counsel, after inquiry of management and members of the Board of Directors of the Issuer, neither the Issuer nor any holder of more than 5% of the outstanding shares of the Issuer is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws.

SMF ¶ 41.  But approximately one month earlier, Merkin had accepted service of a subpoena issued to StratoComm in connection with the SEC's investigation.  At the time Merkin signed the June

17, 2010, letter, he knew that his statement that StratoComm was not under investigation was false. Merkin authorized OTC Markets to publish the June 17, 2010, letter "for viewing by the public and regulators," and Merkin knew that letter would be posted on the OTC Markets website.

### 3.   September 15, 2010 Letter

Merkin submitted another Attorney Letter regarding StratoComm on September 15, 2010.  That letter was posted on the OTC Markets website the same day, and again stated that neither StratoComm nor anyone owning 5% of the company was under investigation for securities violations:

> To the best knowledge of the undersigned counsel, after inquiry of management and members of the Board of Directors of the Issuer, neither the Issuer nor any holder of more than 5% of the outstanding shares of the Issuer is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws.

SMF ¶ 49.  Less than a month before Merkin signed this letter, Merkin had accepted service of a  subpoena to StratoComm's CEO in connection with the SEC's investigation.   Also before signing the September 15 letter, Merkin communicated with SEC staff to confirm the schedule for his clients' investigative testimony, which was to occur in September 2010. At the time that he prepared the September 15 letter, Merkin knew that his statement that StratoComm was not under investigation was false. Here too, Merkin's letter authorized OTC Markets to publish the letter for viewing by the public and

regulators, and Merkin knew it would be posted on the OTC Markets website.

### 4.   December 17, 2010 Letter

On December 17, 2010, Merkin prepared the fourth Attorney Letter at issue in this case.  That letter, which was posted on the OTC Markets website on December 20, 2010, again stated that neither StratoComm nor anyone owning 5% of the company was under investigation for securities violations:

> To the best knowledge of the undersigned counsel, after inquiry of management and members of the Board of Directors of the Issuer, neither the Issuer nor any holder of more than 5% of the outstanding shares of the Issuer is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws.

SMF ¶ 58.  Merkin signed this letter after attending five days of testimony before the SEC in September and October 2010.  This letter was also prepared after Merkin had accepted service of four subpoenas issued by SEC on October 27, 2010, in connection with the investigation of StratoComm.  At the time he signed the December 17 letter, Merkin knew that his statement that StratoComm was not under investigation was false. Once again, Merkin's December 17, 2010, letter authorized OTC Markets to publish the letter, and Merkin knew his letter would be posted on the OTC Markets website.

### III. <u>MOTIONS FOR SUMMARY JUDGMENT</u>

### A. Merkin's Motion for Summary Judgment

Defendant Merkin moves for summary judgment asserting that his statements were: (i) immaterial to investors because Merkin included limiting language that the letters could only be relied upon by the OTC; (ii) were not made "in connection with" the purchase or sale of securities because the SEC has not identified a specific securities transaction tied to the false statements; (iii) were the result of negligence rather than an intent to deceive; and (iv) were not "made" by him, but by StratoComm, because StratoComm posted them on the OTC Market website. Merkin admits that he made some "mistakes", and that the four Attorney Letters at issue contain certain, specific incorrect information; however, he denies that he acted with the requisite intent, to have committed securities fraud. Merkin argues that because the SEC cannot satisfy all of the required elements to prove that he committed securities fraud in violation of Section 10(b) and Rule 10b-5, summary judgment should be entered in his favor.

In response, the SEC argues that the existence of the SEC's investigation into fraud at StratoComm was material information, and thus Merkin's statements denying the existence of that investigation were materially false. The SEC contends that Merkin mistakenly confuses "materiality" with "reliance" in arguing that because his letters contained limiting language that stated only

OTC Markets could rely on them, they were not "material" to investors. The SEC further argues that it need not prove that Merkin's conduct was in connection with the purchase or sale of a particular security but rather only that the statements were disseminated to the public in a medium upon which a reasonable investor would rely. The SEC asserts that Merkin's actual knowledge that his four Attorney Letters at issue contained false statements is sufficient to establish that he acted with scienter. Finally, the SEC argues that Merkin "made" the false statements because Merkin prepared and signed the letters himself.

## B. SEC's Motion for Summary Judgment

The SEC alleges that Merkin violated Section 10(b) of the Exchange Act and Rule 10b-5 by making false statements in the four Attorney Letters to OTC markets. There is no dispute that the statements at issue were untrue. The SEC argues that the because Merkin has admitted that he drafted and signed each of the four letters at issue, there is no dispute that Merkin "made" the false statements at issue. The SEC further argues that the false statements were material because they concerned whether StratoComm was under investigation for violation of the securities laws and that a reasonable investor contemplating a purchase of sale of StratoComm stock would consider the existence of an SEC investigation to be important to the investment decision. The SEC

11

contends that the false statements were "in connection with" the purchase or sale of securities because Merkin authorized StratoComm to post the Attorney Letters on the OTC Markets website where they would be viewed by broker-dealers and the investing public. The SEC asserts that Merkin acted with the requisite scienter by engaging in knowing misconduct when he wrote the four letters at issue while knowing that they contained false information.

Merkin agrees that there are no "material facts in genuine dispute" but responds that the SEC fails to acknowledge significant exculpatory evidence and mis-characterizes the actual record evidence or lack thereof. [D.E. 65]. Specifically, Merkin argues that it was StratoComm who had ultimate authority with respect to whether, and how to communicate the Attorney Letters. Additionally, Merkin asserts that his Attorney Letters were properly limited in scope so that they could only be solely relied upon by the OTC Markets and not the investing public. Moreover, Merkin relies on this disclaimer for the proposition that his statements to the OTC Markets only, were not "in connection with" the purchase or sale of securities because they were not to be relied upon by the investing public. Finally, Merkin labels the false statements as professional "mistakes" based upon his reasonable belief that he was prohibited from publicly disclosing the existence of the SEC's non-public investigation of StratoComm.

## IV. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R.Civ.P. 56 (c). The moving party has the burden of production. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party may meet its burden by showing that there is an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." Henderson v. Carnival Corp., 125 F.Supp. 2d 1375, 1376 (S.D. Fla. 2000).

When the moving party has met this burden by offering sufficient evidence to support the motion, the party opposing must then respond by attempting to establish the existence of a genuine issue of material fact. Adickes, 398 U.S. at 160. "[T]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Ray v. Equifax Info. Servs., L.L.C., 327 F.App'x 819, 825 (11th Cir. 2009)(quoting Matsushita Elec. Indus. Co.,Ltd. v. Zenith Radio Corp., 475 U.S.

13

574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof." Id.

**V. DISCUSSION**

Rule 10b-5, makes it unlawful for "any person, directly or indirectly, ... [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 CFR § 240.10b-5(b). Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301, 180 L. Ed. 2d 166 (2011). "To prove a [§] 10(b) violation, the SEC must show (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." S.E.C. v. Goble, 682 F.3d 934, 942-43 (11th Cir. 2012)(Citations omitted). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301, 180 L. Ed. 2d 166 (2011). Unlike private litigants proceeding under § 10(b), "[t]he SEC is not required to prove reliance or injury in enforcement actions." S.E.C. v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008). "Section 10(b) was designed to protect investors involved in the purchase and sale of securities by requiring full disclosure." S.E.C. v. DCI

14

Telecommunications, Inc., 122 F.Supp.2d 495, 498 (S.D.N.Y.2000)
(citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477-78, 97
S.Ct. 1292, 51 L.Ed.2d 480 (1977)). The scope of liability is the
same under section 10(b) and Rule 10b-5. See S.E.C. v. Merchant
Capital, LLC, 483 F.3d 747, 766 n. 17 (11th Cir.2007); S.E.C. v.
Zandford, 535 U.S. 813, 816 n. 1, 122 S.Ct. 1899, 153 L.Ed.2d 1
(2002); S.E.C. v. Monterosso, 768 F. Supp. 2d 1244, 1261-62 (S.D.
Fla. 2011).

It is undisputed that the four letters at issue contained
false statements regarding the SEC's investigation of StratoComm.
Merkin does not dispute that there was in fact an ongoing SEC
investigation and that he had knowledge of the same when he
authored and signed the four letters at issue which stated that his
client, StratoComm was not under investigation for violations of
securities laws.

A. The "Maker" of the Statements

"For purposes of Rule 10b-5, the maker of a statement is the
person or entity with ultimate authority over the statement,
including its content and whether and how to communicate it." Janus
Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296,
2302, 180 L. Ed. 2d 166 (2011). Merkin argues that he did not
"make" the false statements because the letters were posted on the
OTC Markets website by StratoComm. The Court finds this argument
without merit.

15

Unlike the entity in <u>Janus</u>, there is clear evidence on the face of the letters that the statements came from Merkin rather than from StratoComm. The undisputed record evidence shows that Merkin drafted the letters, placed them on his letterhead, identified the contents of the letters as his opinions, personally signed the letters, and forwarded them to StratoComm with the intent and understanding that the letters would be posted by StratoComm on the OTC Markets website. Here, there is no dispute that Merkin is the person with the ultimate authority over the statement, including its content and whether to communicate it. Moreover, when making the false statement, Merkin was fully aware how the statement would be communicated by StratoComm. Merkin does not dispute that the contents of the four letters in dispute were entirely within his control. As a result, the Court finds there is no genuine issue of material fact as to whether Merkin made the false statements or misrepresentations concerning the SEC investigation of StratoComm.

**B. Materiality**

"The test for materiality in the securities fraud context is 'whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action.' " <u>S.E.C. v. Merchant Capital</u>, 483 F.3d 747, 766 (11th Cir. 2007) (quoting <u>S.E.C. v. Carriba Air</u>, 681 F.2d 1318, 1323 (11th Cir.1982)); <u>S.E.C. v. Goble</u>, 682 F.3d 934, 942-43 (11th Cir. 2012).

16

Summary judgment is appropriate where the misstatement is "so obviously important to an investor that reasonable minds cannot differ on the question of materiality." <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). "Whether an alleged misrepresentation or omission is material necessarily depends on all relevant circumstances of the particular case." <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 162 (2d Cir.2000).

Here, it is undisputed that the at the time that Merkin signed the Attorney Letters at issue, stating that StratoComm was not the target of an investigation, the SEC was in fact investigating StratoComm for violation of securities laws. Exhibit A to the Attorney Letter Agreement, signed by Merkin, specifically required disclosure if "Issuer...is currently under investigation by any federal or state regulatory authority for any violation of federal or states securities laws, and if so, the details of such investigation." Such a requirement is evidence that a reasonable investor would have attached importance to such information and that it might affect a reasonable investor's investment decision. In this case, the SEC investigation dealt with whether the company or its officer had been "employing devices, schemes, or artifices to defraud," or "engaging in transactions, acts, practices, or courses of business which operated ...as a fraud or deceit" with respect to the very nature of the company's business and the use of

proceeds from securities offerings. SMF ¶23. Clearly, there is a substantial likelihood that a reasonable investor would consider the fact that the SEC was investigating StratoComm for violation of securities laws and the details of the investigation important in deciding whether to buy or sell StratoComm stock. The Court therefore finds that the false statements regarding the SEC investigation of StratoComm are so obviously important to an investor that there are no genuine issues of fact concerning the issue of materiality.

**C. "In Connection with the Purchase or Sale of Securities"**

The SEC must demonstrate a connection between Merkin's false statements and the purchase or sale of securities, not investor reliance. Globe at 945. The Supreme Court has instructed that § 10(b) and its "in connection with" requirement be construed "flexibly to effectuate its remedial purposes." S.E.C. v. Zandford, 535 U.S. 813, 819, 122 S.Ct. 1899, 1903, 153 L.Ed.2d 1 (2002) (quoting Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972)); S.E.C. v. Goble, 682 F.3d 934, 945 (11th Cir. 2012). The term "purchase" as used in § 10(b) is not limited to "traditional face-to-face commercial transactions." Globe at 945 (quoting Coffee v. Permian Corp., 434 F.2d 383, 385 (5th Cir.1970)). "In some instances a § 10(b) fraud may occur even without an actual purchase or sale of securities." S.E.C. v. Goble, 682 F.3d 934, 946 (11th Cir. 2012).

18

To meet the "in connection with" requirement, the SEC need only show that "the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." <u>Semerenko v. Cendent Corp.</u>, 223 F.3d 165,175-76 (3rd Cir. 2000); <u>S.E.C. v. Texas Gulf Sulphur Co.</u>, 401 F.2d 833, 860-62 (2d Cir. 1968)(misrepresentations are made "in connection with" the purchase of sale of securities when the statements are made "in a manner reasonably calculated to influence the investing public").

The undisputed facts show that Merkin authorized the publication of the four Attorney Letters at issue on the OTC Markets website thereby displaying them to the public in connection with the quotation of the prices of StratoComm stock. Merkin does not contend that he was unaware that the Attorney Letters would be viewed by the public but rather that he included limiting language that the letters should only be relied upon only by the OTC Markets. The four Attorney Letters at issue were in fact available to broker-dealers, investors, and the general public. Moreover, the dissemination was in such a manner that a reasonable investor would have relied upon the Attorney Letters in making investment decisions regarding StratoComm. The Court finds that these facts are sufficient to satisfy the "in connection with" requirement of SEC's section 10(b) and rule 10b5 claim.

**D. Scienter**

Scienter is "a mental state embracing intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). "To act intentionally means to act deliberately, rather than mistakenly or inadvertently." SEC v. Chem. Trust, No. 00-8015-CIV, 2000 WL 33231600, at *10 (S.D.Fla. Dec.19, 2000). Scienter can be shown through a defendant's acts of knowing misconduct or through acts demonstrating recklessness. Carriba Air, 681 F.2d at 1324. The Eleventh Circuit has stated that, "severe recklessness satisfies the scienter requirement." McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir.1989) (citing Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1010 (11th Cir.1985)). "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Id. (quoting Broad v. Rockwell Intn'l Corp., 642 F.2d 929, 961-62 (5th Cir.1981). A defendant's scienter can be proven through direct or circumstantial evidence. SEC v. Ginsburg, 362 F.3d 1292, 1298 (11th Cir.2004). Although both materiality and scienter are fact-specific issues ordinarily left to the trier of fact, summary judgment may be

20

appropriate in certain cases. <u>In re Apple Computer Sec. Litig.</u>, 886 F.2d 1109, 1113 (9th Cir.1989); <u>Ross v. Bank South, N.A.</u>, 837 F.2d 980, 1003 (11th Cir.1988). A defendant engages in knowing misconduct when he creates documents he knows are false. See, e.g., <u>Suez Equity Investors, L .P. v. Toronto-Dominion Bank</u>, 250 F.3d 87, 99-101 (2d Cir.2001); <u>S.E.C. v. Weintraub</u>, 11-21549-CIV, 2011 WL 6935280 (S.D. Fla. Dec. 30, 2011). Here, it is undisputed that Merkin drafted and signed the four letters at issue knowing that the contents were false. Despite Merkin's characterization of his actions as "mistakes", the Court finds that given all of the circumstances, Merkin's conduct was not inadvertent or the result of a mistake. Specifically, because Merkin repeated the false statements on at least four occasions, and rather than failing to disclose the SEC investigation, Merkin made the false statement that there was no investigation, the Court finds that Merkin's conduct was intentional and that he acted with scienter. At the very least, Merkin acted with severe recklessness in that the four letters contained highly unreasonable misrepresentations that presented a danger of misleading buyers or sellers which were known to Merkin. <u>McDonald</u> at 814.

### VI. <u>CONCLUSION</u>

Merkin has failed to show that he is entitled to judgment as a matter of law, accordingly his request for summary judgment is denied and summary judgment is entered in favor of the SEC.

21

Based thereon, it is hereby

**ORDERED AND ADJUDGED** that Defendant Stewart A. Merkin's Dispositive Motion for Summary Judgment [D.E. 59] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [D.E. 61] is **GRANTED** and summary judgment is entered in its favor and against the Defendant, Stewart A. Merkin. It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** for administrative purposes and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of October, 2012.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  U.S. Magistrate Judge Goodman
     All Counsel of Record

22